# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA M. RAJU, | Case No. ED CV 15-0766-RAO |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Christina M. Raju ("Plaintiff") challenges the Commissioner's denial of her application for social security disability income ("SSDI") benefits under Title II and social security supplemental ("SSI") benefits under Title XVI, following an administrative law judge's ("ALJ") decision denying Plaintiff's application. Administrative Record ("AR") 12-29. For the reasons stated below, the decision of the Commissioner is reversed, and the action is remanded for further proceedings consistent with this Order.

**I.     Proceedings Below**

On September 10, 2012, Plaintiff applied for SSDI and SSI alleging disability beginning on April 2, 2011, her alleged onset date ("AOD")). AR 15.

1  Plaintiff's claim was denied first on June 14, 2013, and upon reconsideration on
2  January 10, 2014. *Id*. Plaintiff then requested an administrative hearing before an
3  ALJ, which occurred on November 25, 2014. *Id*. Plaintiff appeared *pro se* at the
4  hearing. *Id*. A medical expert and a vocational expert also testified. *Id*. On
5  December 4, 2014, the ALJ found that Plaintiff was not disabled. *Id*. at 29. The
6  ALJ's decision became the final decision of the Commissioner when the Appeals
7  Council denied Plaintiff's request for review on February 27, 2015. *Id*. at 1.
8  Plaintiff filed the instant action in this Court on April 20, 2015. Dkt. No. 1.

9  The ALJ followed a five-step sequential evaluation process to assess whether
10 Plaintiff was disabled. 20 C.F.R. §§ 404.1520, 416.920; *see also Lester v. Chater*,
11 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had
12 not engaged in substantial gainful activity since the AOD. AR 17. At **step two**, the
13 ALJ found that Plaintiff had the following impairment or combination of
14 impairments that significantly limited her ability to perform basic work-related
15 activities for 12 consecutive months: lumbar spine degenerative disc disease,
16 cervical spine degenerative disc disease, bipolar II disorder, and cluster B
17 personality traits. *Id.* at 17-18. At **step three**, the ALJ found that Plaintiff did not
18 have an impairment or combination of impairments "that meets or medically equals
19 the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,
20 Appendix 1." *Id.* at 18-19.

21 Before proceeding to step four, the ALJ found that Plaintiff has the residual
22 functional capacity ("RFC") to:

23 > [P]erform light work as defined in 20 CFR 404.1567(b) and
24 > 416.967(b) with the following additional limitations: she can lift 20
25 > pounds occasionally and 10 pounds frequently; she can sit, stand, and
26 > walk for six hours during a work day, with normal change in position
27 > as required by state law; she can push and pull within those weight
28 > limits; she is precluded from climbing ladders, ropes, or scaffold; she

> cannot work at unprotected heights; she can occasionally work around moving machinery at ground level; she can perform noncomplex, routine tasks; she cannot perform tasks requiring hypervigilance; she cannot work or on the public [sic]; and she is limited to occasionally performing tasks that require teamwork.

AR 19-20.

At **step four**, the ALJ found that Plaintiff is unable to perform any past relevant work. AR 27. At **step five**, based on Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff is able to perform. *Id*. at 28. Accordingly, the ALJ found that Plaintiff is not disabled. *Id.* at 29.

## II. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir.

2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. Discussion

Plaintiff raises three issues in her appeal: (1) the ALJ failed to properly consider the medical evidence of record regarding Plaintiff's physical impairments in assessing plaintiff's RFC; (2) the ALJ failed to properly develop and consider the relevant medical evidence of record as it pertains to Plaintiff's mental RFC; and (3) the ALJ failed to properly consider Plaintiff's subjective complaints and failed to properly assess her credibility. Memorandum in Support of Plaintiff's Complaint ("Pl. Memo.") at 3-15; Dkt. No. 22.

#### A. Plaintiff's Assessed Mental RFC

The Court addresses Plaintiff's second claim first, that the ALJ inappropriately rejected the opinion of Plaintiff's primary treating psychiatrist, Dr. Messinger. (Pl. Memo. at 8-12.)

#### 1. Dr. Messinger's Opinion

Dr. Jon Messinger, Plaintiff's treating psychiatrist, diagnosed Plaintiff with bipolar I disorder and as being "depressed; severe with psychotic episodes." (AR 741.) Dr. Messinger opined that Plaintiff "could not maintain a sustained level of concentration, could not sustain repetitive tasks for an extended period, and could not adapt to new or stressful situations." (*Id.* at 27.) "Consequently, [Dr.

///

Messinger] concluded [Plaintiff] could not complete a 40-hour workweek without decompensating." (*Id.*)

### 2. State agency mental medical consultants and medical experts

Dr. Kathy Vandenburgh, a licensed clinical psychologist evaluated Plaintiff on July 6, 2011. (AR 22.) Dr. Vandenburgh diagnosed Plaintiff with ADHD and bipolar disorder. (*Id.*) Based on her examination, she opined that Plaintiff "would occasionally have moderate to marked limitations in social interaction, and would have marked limitations in completing complex tasks." (*Id.*)

Dr. Oluwafemi Adeyemo, a board certified psychiatrist and consultative examiner, evaluated Plaintiff on April 29, 2013. (AR 23.) Dr. Adeyemo diagnosed with bipolar I disorder, severe with psychotic features, ADHD, ruled out schizoaffective disorder, and assessed a global assessment of functioning score of 59. (*Id.*) Based on his examination, Dr. Adeyemo opined that plaintiff "would not be able to execute complex instructions, but would otherwise have no more than mild functional limitations." (*Id.*)

Dr. David Glassmire, a licensed psychologist, testified as a medical expert at the hearing. (AR 22.) Dr. Glassmire reviewed all of the mental health medical exhibits of record prior to testifying at the hearing. (*Id.*) He testified that the plaintiff "had the following medically determinable impairments from [the AOD] to the [time of the hearing]: bipolar II disorder; and cluster B personality traits." (*Id.*) Dr. Glassmire opined that Plaintiff would have the following limitations: "she would be limited to noncomplex, repeat tasks; she would be precluded from tasks requiring hypervigilance; she would be precluded from interaction with the public; and she could occasionally perform tasks requiring teamwork." (*Id.*)

### 3. ALJ's Decision

In arriving at Plaintiff's assessed mental RFC, the ALJ's decision summarized some of the medical evidence regarding Plaintiff's mental health impairments:

> With regard to [Plaintiff's] alleged mental impairments, the record indicated [Plaintiff] was seen on November 13, 2012 requesting a change in medication to treat depression and mood swings/anger. She also alleged recent suicidal ideations, past suicide attempts, and auditory hallucinations []. A mental status examination showed her speech was pressured, her motor activity was restless, concentration and memory were poor, she was paranoid and alleged auditory hallucinations, her mood was depressed, irritable, and anxious and her affect was depressed and labile []. However, it was also noted that she was not fully compliance [sic] with their psychotropic medications [].
>
> The record thereafter indicated [Plaintiff] continued to receive psychotropic medication treatment. However, these treatment records did not indicate mental status examinations were conducted. On December 4, 2012, it was noted [Plaintiff] was admitted to the hospital on a 5150 hold after reporting homicidal ideations regarding her neighbor []. It was noted shortly thereafter on December 11, 2012 [Plaintiff] prescribed [sic] lithium, but had experienced significant side effects and discontinued this medication.
>
> On January 14, 2013, it was noted she had been prescribed Saphris, which he [sic] reported was really helping and resulted in a calmer mood, better focus, and clearer thoughts []. On January 23, 2013, she complained of feeling more depressed and crying, but it was noted she had run out of her medications []. [Plaintiff] presented on March 18, 2013 complaining she was more irritable, but also stated she had been cutting back on medications so that she did not run out. She denied hearing voices, but alleged suicidal ideations [].

AR 21-22. (Citations to record exhibits omitted as indicated by empty brackets.)

///

6

The ALJ accorded great weight to the opinion of Dr. Glassmire in determining Plaintiff's mental RFC. (AR 25.) The ALJ noted that the opinions of non-examining sources are generally entitled to less weight than the opinion of a treating or examining source, but found that not warranted in this case. (*Id.*) The ALJ wrote that Dr. Glassmire is a "mental health specialist" who was aware "of all the evidence in the record" and has "an understanding of the social security disability programs and evidentiary requirements." (*Id.*) "Most importantly, his opinion regarding [Plaintiff's] functional limitations is highly credible because it is well-supported by the objective medical evidence…." (*Id.*)

The ALJ next gave significant weight to the opinions of the state agency mental medical consultants. (AR 25.) The agency consultants opined that Plaintiff would have "moderate limitations in her ability to maintain attention and concentration and in social functioning." (*Id.* at 25-26.) The ALJ noted that their opinions were generally consistent with the opinion of Dr. Glassmire and were further supported by the medical evidence, which showed a history of bipolar symptoms. (*Id.* at 26.)

The ALJ gave some weight, but not significant weight, to the opinions of Dr. Vandenburgh and Dr. Adeyemo. With respect to Dr. Vandenburgh, the ALJ disagreed with the "extreme 'marked' limitations" she assessed. (AR 26.) In according less weight to this opinion and more to Dr. Glassmire's opinion, the ALJ wrote that "unlike Dr. Vandenburgh's one-time examination of [Plaintiff], [Dr. Glassmire's] determinations were based on medical evidence covering the entire adjudication period" and because his opinion is "based on the evidence as a whole," the ALJ found it to be more credible. (*Id.*) The ALJ's reasoning with respect to Dr. Adeyemo's opinion was similar: because Dr. Adeyemo's opinion was based on a one-time examination of the Plaintiff, rather than a "longitudinal history of treatment," the ALJ discounted it. Instead, the ALJ again accorded greater weight to Dr. Glassmire's opinion "because he had an opportunity to review the entire

medical record" and "took into consideration [Plaintiff's] history of bipolar disorder and the effect [] on [Plaintiff's] ability to interact appropriately with others." (*Id.*)

With respect to the opinion of Plaintiff's primary treating psychiatrist, Dr. Messinger, the ALJ found Dr. Messinger's opinion not credible because it was conclusory and lacked any objective psychiatric findings to support it. (AR 27.) The ALJ's decision concluded:

> Furthermore, the medical records from the mental health clinic where [Dr. Messinger] was employed indicated there were generally known [sic] mental status examinations conducted during [Plaintiff's] appointments. It appears he may have overriding [sic] the claimant's subjective complaints in making his conclusions. Furthermore, he also did not consider the fact that the records indicated the claimant was not compliant with her medication treatment during much of the adjudication period and missed many appointments. For all these reasons, his conclusions were not credible and were given little weight.

(AR 27.)

### 4. Applicable Law and Analysis

Courts give varying degrees of deference to medical opinions depending on the type of physician providing the opinion: (1) "treating physicians" who examine and treat; (2) "examining physicians" who examine, but do not treat; and (3) "non-examining physicians" who neither examine nor treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). A treating physician's opinion is generally entitled to greater weight than a non-treating physician's opinion, and an examining physician's opinion is generally entitled greater weight than a non-examining physician's opinion. *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014). If a treating physician's opinion is contradicted by another medical opinion, an ALJ must give "specific and legitimate reasons" for rejecting it. *Orn,* 495 F.3d

///

8

at 633. If a treating physician's opinion is not contradicted, it may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830.

Here, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Messinger's opinion. The Court determines that the ALJ failed to do so. First, the Court agrees with Plaintiff that the ALJ's reasons for finding Dr. Messinger's opinion not credible ("[f]urthermore, the medical records from the mental health clinic where he was employed indicated there were generally known mental status examinations conducted during [Plaintiff's] appointments. It appears he may have overriding [sic] the claimant's subjective complaints in making his conclusions"), are difficult to understand, and therefore fails to satisfy the requirement that the reasons be specific and legitimate.

Second, the Court finds the one specific reason provided by the ALJ for rejecting Dr. Messinger's opinion – Dr. Messinger's purported failure to "consider the fact that the records indicated the claimant was not compliant with her medication treatment during much of the adjudication period and missed many appointments" – to be an inadequate reason. As the Ninth Circuit has stated, "we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." *Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014); *see also Walters v. Astrue*, 444 F. App'x 913, 919 (7th Cir. 2011) (whether claimant may have been off his medication determined not to be legally significant fact in determining disability; "people with mental illness often struggle to stay on their drugs because of the adverse side effects").

The record amply demonstrates Plaintiff's long struggle with her underlying bipolar disorder, including a period of hospitalization. On this record, the Court cannot rule out that Plaintiff's decision not to take her medications was not, at least in part, a result of her bipolar disorder and other psychiatric issues. Additionally, as Plaintiff notes in her memorandum, the record reflects that Plaintiff's decision not

to be fully compliant with her medication plan may have been affected by the lack of available health insurance to cover her medication costs – Plaintiff reported that she "had been cutting back on medications so that she did not run out," a fact the ALJ's decision fails to fairly account for in discrediting Dr. Messinger's opinion.

Accordingly, the Court finds that the ALJ did not provide specific and legitimate reasons for rejecting Dr. Messinger's opinion.

### B. Duty to Develop the Record

Plaintiff also contends in her memorandum that the ALJ failed to properly develop the record with respect to Plaintiff's mental impairments. (*Id*. at 8.)

While the claimant is responsible for providing sufficient medical evidence of his or her disabling impairment(s), it has "long [been] recognized that the ALJ is not a mere umpire at [an administrative proceeding], but has an independent duty to fully develop the record[.]" *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992, as amended Sept. 17, 1992) (per curiam); *see also Sims v. Apfel*, 530 U.S. 103, 110-11, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]"). In *Tonapetyan v. Halter*, 242 F.3d 1144 (9th Cir. 2001), the Ninth Circuit discussed the ALJ's duty to develop the record, stating as follows:

> The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant. When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts. . . . The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of

> the evidence, triggers the ALJ's duty to conduct an appropriate inquiry. The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.

Id. at 1150 (citations and internal quotation marks omitted).

Viewing the facts of this case in light of *Tonapetyan*, the Court finds that the ALJ had a duty to develop the record and erred by not doing so. First, because Plaintiff was unrepresented through most of the administrative proceedings, the ALJ was required to be "especially diligent in exploring for all the relevant facts." *Tonapetyan*, 242 F.3d at 1150; accord *Widmark v. Barnhart*, 454 F.3d 1063, 1068-69 (9th Cir. 2006); *see also Higbee*, 975 F.2d at 561 ("'[W]here the claimant is not represented, it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'") (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)).

Second, because both the record and Plaintiff's testimony demonstrate a history of treatment for bipolar disorder, the ALJ's duty to develop the record was "heightened." *See Tonapetyan*, 242 F.3d at 1150; *see also Quevedo v. Colvin*, 2014 WL 3529435, at *5 (C.D. Cal. July 15, 2014) (citing *Plummer v. Apfel*, 186 F.3d 422, 434 (3d Cir. 1999) (when there is a suggestion of mental impairment, an ALJ must inquire into the current status of that impairment and its possible effect on a claimant's ability to work); *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (a claimant only needs to raise suspicion about a mental impairment to trigger the duty to develop the record); *Hilliard v. Barnhart*, 442 F. Supp. 2d 813, 817 (N.D. Cal. 2006) (same)). In light of the record before the Court, which reflects Plaintiff's long history with mental illness, combined with her *pro se* status for much of the administrative proceedings below, the ALJ should have, at a minimum, contacted

Dr. Messinger to inquire further about his findings and opinions.

Accordingly, the Court orders this matter remanded for further development of the record.[1] *Garrison*, 759 F.3d at 1020 (before remanding for an award of benefits, the Court must find "the record has been fully developed and further administrative proceedings would serve no useful purpose.").[2]

## IV. Conclusion

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

DATED: May 31, 2016

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

---

[1] As noted, the Court finds that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Messinger's opinion. On remand, after further developing the record, the ALJ shall either credit Dr. Messinger's opinion or provide adequate legal reasons under the appropriate legal standard for rejecting any portion of his opinion. *See Lester*, 81 F.3d at 830.

[2] Because the Court concludes that remand is appropriate to further develop the record, the Court declines to address the remaining issues raised in Plaintiff's memorandum. With respect to Plaintiff's claim regarding the ALJ's assessment of her credibility, credibility findings are reviewed in light of the record as a whole, which in the instant case should be done after the record is fully developed. *Struck v. Astrue*, 247 F. App'x 84, 86-87 (9th Cir. 2007). Similarly, with respect to Plaintiff's claim regarding a step two error, the Court concludes that, in the interest of judicial economy, the record would benefit from further development regarding Plaintiff's physical impairments and, after further development, the ALJ can reassess whether any changes at step two of the sequential analysis are required.